**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **HOANG NGUYEN** | : |
| | : |
| **Petitioner,** | :   **3:26-cv-1661** |
| | :   **(JUDGE MARIANI)** |
| **v.** | : |
| | : |
| **JESSICA SAGE, WARDEN OF FCI** | : |
| **LEWISBURG,** | : |
| | : |
| **Respondent.** | : |

## MEMORANDUM OPINION

### I.    BACKGROUND

Petitioner Hoang Nguyen ("Petitioner"), a citizen of Vietnam who entered the United States in 1989 as a refugee, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (Doc. 1).  Petitioner is detained within the Middle District of Pennsylvania and names as Respondent Jessica Sage, Warden of FCI Lewisburg.

In the petition, Petitioner raises constitutional, statutory, and regulatory claims. Specifically, Petitioner claims that his detention violates the Due Process Clause of the Fifth Amendment, 8 U.S.C. § 1231(a)(6), and 8 C.F.R. § 241.13 because his detention has exceeded six months and his removal to Vietnam is significantly unlikely in the reasonably foreseeable future.  (*Id.*, ¶¶ 61-72).  Respondent Sage opposes the petition.  (Doc. 7).  For the reasons that follow, the Court will grant the petition.

Petitioner is a 56-year-old Vietnamese national who entered the United States as a refugee in 1989 and became a lawful permanent resident. (Doc. 1, ¶ 1). Petitioner was convicted of armed robbery in August 2005 and received a sentence of five years imprisonment. (Doc. 7-2 at 3). On October 25, 2005, immigration officials arrested Petitioner and issued a Notice to Appear charging him as deportable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) for being convicted of an aggravated felony.[1] (Doc. 7 at 2).

On February 8, 2008, an Immigration Judge ordered Petitioner removed to Vietnam. (*Id.*). Petitioner's removal order became final on March 11, 2008. (*Id.* at 3).

Several months later, immigration officials arrested Petitioner "as a fugitive." (*Id.* at 2). On November 8, 2008, Petitioner was released on an Order of Supervision. (*Id.*). On July 31, 2015, immigration officials again arrested Petitioner "as a fugitive" and revoked his Order of Supervision. (*Id.* at 2-3). On September 22, 2015, immigration officials again released Petitioner on an Order of Supervision. (*Id.* at 3).

At his check-in appointment on December 29, 2025, Petitioner was detained by ICE and his Order of Supervision was revoked. He has been detained at FCI Lewisburg since, for approximately seven months.

---

[1]      Petitioner was convicted of simple assault in 2000. (Doc. 7 at 3). In October 2003 he was arrested for "peddler trading without a license" and Respondent represents that Petitioner "has a bench warrant for that offense." (*Id.*). Petitioner's most recent arrest was in 2015 when he was arrested for domestic violence. (*Id.*). Since 2015, Petitioner does not appear to have been charged with, or convicted of, any criminal offenses.

## II.    STANDARD OF REVIEW

Absent suspension, the Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  Pursuant to 28 U.S.C. § 2241, a federal district court may grant a habeas petition where a petitioner's immigration detention is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Claims brought by immigration detainees seeking relief from their confinement "fall within the core of the writ of habeas corpus." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025).  It is well established that a federal habeas corpus petitioner generally has the burden of proving facts entitling him to a discharge from custody. *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972) (citations omitted).

## III.    ANALYSIS

In the petition, Petitioner alleges that his detention has exceeded six months and his removal to Vietnam is significantly unlikely in the reasonably foreseeable future.[2] Respondent opposes the petition, claiming that the petition should be dismissed because the April 17, 2026, request to Vietnam for Petitioner's travel document remains pending and has not been denied.  Respondent also note that "[o]nce Vietnam issues a travel document, Mr. Nguyen will be removed." (Doc. 7 at 4).

### Section 1231(a) and *Zadvydas*

8 U.S.C. § 1231(a) "governs the detention, release, and removal of individuals ordered removed." *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022).  "Once an alien is ordered removed, DHS must physically remove him from the United States within a 90-day removal period." *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(1)(A)).  "The statute provides that the Government 'shall' detain noncitizens

---

[2]    Although not raised by either party, the Court has jurisdiction to consider the issues raised in the petition. *See Khalil v. President, United States*, 164 F.4th 259, 277-79 (3d Cir. 2026) (holding that detention specific claims, like length and conditions of confinement do not "arise from" removal proceedings and can be addressed by district courts); *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (declining to interpret 8 U.S.C. § 1252(b)(9) in an "extreme way that would also make claims of prolonged detention effectively unreviewable").  Nor does 8 U.S.C. § 1252(g) bar this Court's jurisdiction because Petitioner is not asking this Court to stay the execution of his removal order. *Tazu v. Att'y Gen., United States*, 975 F.3d 292, 296-98 (3d Cir. 2020).  Rather, Petitioner brings a detention specific claim seeking to remedy his alleged unlawful executive detention by asserting that his removal to Vietnam is not significantly likely in the reasonably foreseeable future and, as such, his detention is no longer authorized by 8 U.S.C. § 1231(a)(6). Moreover, Petitioner is not required to exhaust his administrative remedies. *See Jaleel v. Sage*, 2026 WL 1234846, at *2 (M.D. Pa. May 5, 2026) (exhaustion of administrative remedies "would be pointless" where petitioner "is detained under 8 U.S.C. § 1231, which precludes immigration judges from holding a bond hearing").

4

during the statutory removal period." *Arteaga-Martinez*, 596 U.S. at 578; *see also Guzman Chavez*, 594 U.S. at 528 ("During the removal period, detention is mandatory.")

"After the removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specific grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal." *Arteaga-Martinez*, 596 U.S. at 578-79 (citing 8 U.S.C. § 1231(a)(6)). "Section 1231(a)(6) does not expressly specify how long detention past the 90-day removal period may continue for those who fall within the four designated statutory categories." *Id.* at 579.

In *Zadvydas* the Supreme Court found that a statute "permitting indefinite detention of an alien would raise a serious constitutional problem." *Zadvydas*, 533 U.S. at 690. To avoid those concerns, the Supreme Court interpreted 8 U.S.C. § 1231(a)(6) to limit post-removal order detention to a period "reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also Clark v. Martinez*, 543 U.S. 371, 384 (2005) (clarifying *Zadvydas* and noting that the "the statute should be read (in line with the other plausible reading) to authorize detention *only for a period consistent with the purpose of effectuating removal*.") (emphasis added). Detention for up to six months after a final order of removal is "presumptively reasonable." *Zadvydas*, 533 U.S. at 701.

The expiration of the six-month period "does not mean that every alien not removed must be released after six months." *Id.* Rather, "[a]fter this 6-month period, once the alien

provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* Accordingly, a noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."[3] *Id.* However, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by the statute." *Id.* at 699.

## Petitioner Satisfied His Burden

Petitioner's presumptively reasonable six-month period of detention under Section 1231(a)(6) has run. *Zadvydas*, 533 U.S. at 701. He has been detained for over six months while the Government has attempted to effectuate his removal to Vietnam. As such, the Court finds that Petitioner's detention under 8 U.S.C. § 1231(a)(6) has become unreasonably prolonged.

The Court further finds that Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. "Courts in the Third Circuit have found that evidence of the process for producing travel documents from Vietnam for pre-1995 immigrants establishes good reason to believe that removal of a pre-

---

[3]    In addition, "for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the reasonably foreseeable future conversely would have to shrink." *Zadvydas*, 533 U.S. at 701. "*Zadvydas* does not delineate the boundaries of evidentiary sufficiency, but it suggests that an inversely proportional relationship is at play: the longer an alien is detained, the less he must put forward to obtain relief." *Alexander v. Att'y Gen. United States.*, 495 Fed. App'x 274, 276-77 (3d Cir. 2012) (non-precedential).

1995 Vietnamese immigrant detained under 8 U.S.C. § 1231 is not reasonably foreseeable." *Nam Van Phan v. Warden*, 2026 WL 1080390, at *5 (M.D. Pa. Apr. 21, 2026) (collecting cases).

Here, Petitioner submits two declarations in support of his argument that his removal to Vietnam is significantly unlikely in the reasonably foreseeable future. (Docs. 1-1, 1-2). The Court has relied on these two declarations in other habeas cases to find that the petitioner demonstrated that his removal to Vietnam is significantly unlikely in the reasonably foreseeable future. *Nguyen v. Sage*, 2026 WL 1348513, at *4-6 (M.D. Pa. May 14, 2026). "Mr. Nguyen's and Dr. Ha's declarations make clear that the diplomatic process for repatriating a pre-1995 Vietnamese" immigrant like Petitioner "is highly individualized" and "the fact-specific vetting processing process takes a significant amount of time." *Id.* at *6. "Requesting travel documents from Vietnam for a pre-1995 Vietnamese refugee does not mean they will be issued, and sometime the Vietnamese Embassy constructively denies repatriation by simply not responding to ICE's request for travel documents." *Id.* Moreover, although the 2020 Memorandum of Understanding between Vietnam and the United States "provides that Vietnam will generally issue a travel document within 30 days of receipt" in his declaration Mr. Nguyen attests he has yet to see Vietnam issue a travel within 30 days or less. *Id.* Accordingly, the Court finds that Petitioner has provided good reasons to believe his removal to Vietnam is significantly unlikely in the reasonably foreseeable future. The burden now shifts to Respondent.

7

**Respondent Fails to Rebut Petitioner's Showing**.

Having met his initial burden, the burden shifts to the Respondent to rebut Petitioner's showing that his removal to Vietnam is significantly unlikely in the reasonably foreseeable future. Respondent submitted the declaration of Alex Hans under penalty of perjury and in accordance with 28 U.S.C. § 1746. Mr. Hans is a Deportation Officer for ICE, Enforcement and Removal Operations ("ERO"), and is "assigned to the ERO detained docket" at FCI Lewisburg. (Doc.7-5, ¶ 1). After recounting Petitioner's criminal and immigration history, Mr. Hans states that ICE sent a request for travel documents to the Vietnamese embassy on April 17, 2026. (*Id.*, ¶ 19). Mr. Hans also states that he was informed that for Fiscal Year 2025 "there were 699 people removed to Vietnam, including 327 which were pre-1995 entries" and that, to date, no travel document request has been denied. (*Id.*, ¶ 20). To date, however, Vietnam has not issued travel documents for Petitioner.

The conclusory statements contained in Mr. Hans' declaration do not suffice to satisfy the Respondent's burden. There is no credible evidence that Petitioner's removal to Vietnam is significantly likely in the reasonably foreseeable future. Although Respondent has provided the Court with general statistics regarding the repatriation of pre-1995 Vietnamese immigrants like Petitioner, these statistics say nothing about the likelihood of *the Petitioner's* removal to Vietnam in the reasonably foreseeable future. "General repatriation statistics that Mr. Hans was informed of by HQ-RIO, without further context, are

8

insufficient to rebut a showing that Petitioner's removal to Vietnam is significantly unlikely in the reasonably foreseeable future." *Nguyen*, 2026 WL 1348513, at *7.  Courts in this district have also found that the Government failed to satisfy its *Zadvydas* burden when it relies on vague and general assertions of the mere possibility of repatriation, without including any information specific to the petitioner, or when there is no evidence that the petitioner's travel documents were issued by his native country or even sent by ICE.  *See, e.g.*, *Yang Li v. Warden*, 2026 WL 1266248, at *6 (M.D. Pa. May 8, 2026) (government failed to satisfy *Zadvydas* burden when it "provides no indication that the application has been sent to China or when the application will be approved"); *Nam Van Phan*, 2026 WL 1080390, at *5 ("Courts in the Third Circuit have also found that assertions from the government of a remote possibility of eventual removal is not sufficient evidence to rebut that showing.") (collecting cases).

Nor does Respondent attempt to explain why efforts to remove Petitioner from the United States for the past twenty years have been unsuccessful.  *See Thach v. English*, 2026 WL 1109344, at *2 (N.D. Ind.  Apr. 26, 2026) (granting petition where government failed to rebut showing that petitioner's removal was unlikely in the reasonably foreseeable future and the respondent "does not explain why efforts to remove Thach to Vietnam will be successful now when they were unsuccessful in 2012").  Because Respondent fails to rebut Petitioner's showing that his removal to Vietnam is significantly unlikely in the reasonably foreseeable future, the Court will grant Petitioner's habeas petition.  Petitioner's detention

9

under 8 U.S.C. § 1231(a)(6) has exceeded six months consecutively and is beyond the period "reasonably necessary to bring about [his] removal from the United States." *Zadvydas*, 533 U.S. at 689.

## Habeas Remedy

As a remedy, Petitioner seeks his immediate release from custody.  A noncitizen with a final order of removal may be released from custody but that release "may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances." *Zadvydas*, 533 U.S. at 700.  The Court will order Respondent to release Petitioner from custody within 48 hours and to restore the conditions of his prior Order of Supervision.[4]  *See Nam Van Phan v. Warden*, 2026 WL 1080390, at *6 (granting petition and ordering release from custody and restoration of "the conditions of his prior supervisory release"); *see also Wazir v. Att'y Gen. U.S.*, 2026 WL 1122610, at *4 (M.D. Pa. Apr. 24, 2026) (ordering release and finding that petitioner "shall be subject to the terms of supervision in 8 U.S.C. § 1231(a)(3) and attendant regulations").

---

[4]  Respondent asks the Court to not release Petitioner and instead "order a bond hearing." (Doc. 7 at 7).  However, nothing in the text of 8 U.S.C. § 1231 provides for bond hearing for noncitizens with a final order of removal.  *See Moseychuk v. Sage*, 2026 WL 2032974, at *2 (M.D. Pa. July 14, 2026) (Judge Mannion noting that the petitioner "is detained under 8 U.S.C. § 1231, which precludes immigration judges from holding a bond hearing") (citing *Johnson-Arteaga*, 596 U.S. at 573)  To the extent Respondent seeks to impose additional conditions on Petitioner's Order of Supervision, such as an ankle monitor, nothing in this memorandum opinion and order precludes the Government from doing so.

## IV.    CONCLUSION

For the foregoing reasons, Petitioner's habeas petition will be granted.  A separate

Order follows.

Robert D. Mariani
United States District Judge